**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| ARTHUR LEE ELLISON, JR., | : | |
| | : | Civil Action No. 08-116 (SRC) |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| MICHELLE R. RICCI, et al., | : | |
| | : | |
| Respondents. | : | |

---

**APPEARANCES:**

Arthur Lee Ellison, Jr., Pro Se
#426778/28034B
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Sara B. Liebman
Office of the Union County Prosecutor
32 Rahway Avenue
Elizabeth, NJ 07202-2115
Atto_____       ondents

**CHESLER, District Judge**

Petitioner Arthur Lee Ellison, Jr., a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Michelle R. Ricci and the Attorney General of New Jersey, Anne Milgram.

For the reasons stated herein, the petition must be denied.

**BACKGROUND**

**A.    Factual Background**

The relevant facts are set forth in the opinion of the
Superior Court of New Jersey, Appellate Division ("Appellate
Division").[1]

> Barbara Chery (the victim) testified that she was
> tackled by a man while walking to her home in
> Maplewood.  The attacker held her down with his left
> arm, stabbed her right hip and leg with a screwdriver,
> then grabbed the victim's bookbag and ran off.
>
> Police officers dispatched to the area were told
> by a pedestrian that he had seen someone running in the
> general vicinity.  The officers drove in the direction
> indicated by the pedestrian and spotted defendant, who
> was then seen discarding items.  Defendant was taken
> into custody.  At police headquarters an officer
> noticed what appeared to be fresh blood on defendant's
> jacket and pants.
>
> The blood found on defendant's jacket and pants
> were taken to a laboratory for DNA analysis.  A
> geneticist later testified that the DNA taken from the
> victim's blood matched the DNA taken from the blood
> removed from defendant's jacket.  In addition, the DNA
> removed from the blood found on defendant's pants
> matched the DNA taken from a sample of defendant's
> blood.
>
> Prior to trial defendant asserted that the
> particular brand of DNA test kit used – the "Profiler
> Plus Fluorescent Tag Test" – is not scientifically
> reliable.  A hearing, pursuant to N.J.R.E. 104, was
> conducted by Judge Moynihan.  At that time, the State

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

presented the testimony of two scientists employed by
the testing facility which examined the blood samples.
Defendant called no witnesses.

Judge Moynihan found, from the testimony of the
State's experts, that the State sustained its burden of
showing that the particular device which produced the
DNA evidence is generally accepted in the scientific
community.   ...

See Respondents' Appendix ("Ra") 14, Appellate Division Opinion,
dated Nov. 7, 2003, at 3-5 (internal citation omitted).

**B.   <u>Procedural History</u>**

On April 8, 1999, a Union County Grand Jury returned an
indictment charging defendant with four counts: third-degree
possession of a weapon for an unlawful purpose, contrary to
<u>N.J.S.A.</u> 2C:39-4(d) (count one); third-degree terroristic
threats, contrary to <u>N.J.S.A.</u> 2C:12-3(b) (count two); first-
degree armed robbery, contrary to <u>N.J.S.A.</u> 2C:15-1 (count three);
and third-degree aggravated assault, contrary to <u>N.J.S.A.</u> 2C:12-
1b(2) (count four).

After pretrial motions, in July of 2001, a jury trial was
conducted in the Superior Court of New Jersey, Union County.
Petitioner was found guilty of counts one, three, and four.  He
was acquitted of count two.  On December 7, 2001, Petitioner was
sentenced to an aggregate term of life in prison, without parole,
pursuant to an extended term sentence.  On November 7, 2003, the
Appellate Division affirmed the conviction.  On January 22, 2004,

the New Jersey Supreme Court denied Petitioner's petition for certification.

Petitioner filed a state court petition for post-conviction relief (PCR) on or about August 18, 2004.  The trial court denied relief on March 13, 2006.  The Appellate Division affirmed the denial of relief on June 18, 2007.  The Supreme Court of New Jersey denied certification on September 26, 2007.

This petition, filed on January 4, 2008, followed. Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), on February 28, 2008.  An Order to Answer was issued and Respondents filed a response to the petition on June 16, 2008.  Petitioner filed a Traverse/Reply to the response on July 7, 2008.

C.   **Petitioner's Claims**

Petitioner's "Statement of Claims for Relief" asserts:

> The petitioner Arthur Ellison submit[s] to the U.S. District Court [that] his attorney was ineffective for failing to properly advise him that he was facing an extended term of life imprisonment without parole if provided he did not take a plea of 25 years with an 85%.  As the court will take notice, the petitioner clearly did not sign the plea agreement at that time because counsel never informed or advised him that he would instead be facing life imprisonment without the possibility of parole only 50 years.  Due to the petitioner's plea of innocent and defense of misidentification, he refused the plea hoping he has a chance to prove his case.
>
> The petitioner was convicted of possession of a weapon for an unlawful purpose, terroristic threats, first degree armed robbery, and aggravated assault in the Superior Court of New Jersey, Union County.

4

The claims petitioner submits to the District Court for review is [sic] founded upon the denial of the state courts to hear and determine the facts necessary to establish the petitioner's claims during an evidentiary hearing.  It is also clear that Ellison has taken every step in the New Jersey courts to gain an evidentiary hearing to determine these facts.  The petitioner went as far as filing his own motion for experts, and the facts surrounding his plea agreement which the trial court denied for the purpose of Federal Court Review [sic].

The fact is each time the petitioner's trial counsel failed to pursue certain witnesses on direct, the petitioner had to speak up for himself and put on the record the best he could that counsel's representation was not complete.  The plea is made in reference to Ground Fifteen.

"It was clearly obvious when trial counsel plainly abandoned the defendant at a crucial point of the proceedings and conceded by stating, so there's no argument from defense on that motion.  Outside of that, Judge, the law is pretty clear.  It's mandatory."

The trial attorney didn't listen to the petitioner concerning his sentence that, it was being enhanced on two offenses that ran concurrent to one another (which made one conviction).  The problem is [that] when the petitioner's former murder case was reversed by the N.J. Appellate Courts, the judge decided to now run the two convictions separately offending the due process. . . . .  Therefore, the challenge to the two former plea agreements should have been given a hearing to determine the facts.  Furthermore, plea agreements are not like jury trials and the facts to establish those "contracts" should be determined only in light of the colloquy and facts establish[ed] during sentencing. Notably, even [the] confrontation clause of [the] Sixth Amendment applies at [an] evidentiary hearing regarding disputed facts in presentence report must be met [sic].

The problem is that counsel was not prepared to argue nor listened to the petitioner that the prior plea of aggravated sexual assault and the manslaughter conviction used to enhance his sentence was illegal and violative of the contract made between the state and the defendant.

The former charges occurred in the same county, and if perhaps his trial counsel listened, and investigated what he (petitioner) was telling him instead of being unprepared, the petitioner could have received the benefit of an evidentiary hearing to determine those facts, especially, considering the facts were never made part of the record and nor did he advise Ellison what he was really facing.

* * *

The trial court did implicate to Ellison that he would face 55 years if he didn't take the plea, however, there was nothing to implicate an extended term of life imprisonment without the possibility of parole for had Ellison known, he would have taken the earlier plea agreement of 20 years with an 85% [had] there been no other option.

This along with the cumulative effects of trial counsel, and the fact that the enhanced penalties were not found by a jury nor hearing entitled the petitioner Ellison [to] further relief.

(Statement of Claims, pp. 1-3, docket entry 1-6).

## DISCUSSION

### A.   Standards Governing Petitioner's Claims.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

>  (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly
> established Federal law, as determinated by the Supreme
> Court of the United States; or
>
>  (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09.  To be an "unreasonable application" of clearly established federal law,

the state court's application must be objectively unreasonable. See id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts.  See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.    **Claims of Ineffective Assistance of Counsel**.

Petitioner asserted various claims of ineffective assistance of trial counsel in his post-conviction relief motions and in this petition.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every

9

> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.

Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.

1020 (1996).

     If able to demonstrate deficient performance by counsel, the

petitioner must also show that counsel's substandard performance

actually prejudiced his defense.  See Strickland, 466 U.S. at

687.  Prejudice is shown if "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the

outcome."  Id. at 694.  The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence.

See id. at 695-96.  Thus, the petitioner must establish both

deficient performance and resulting prejudice in order to state

an ineffective assistance of counsel claim.  See id. at 697; see

also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

     The Supreme Court has held that the Due Process Clause of

the Fourteenth Amendment guarantees a defendant the effective

assistance of counsel on a first direct appeal as of right.  <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the <u>Strickland</u> standard.  <u>See</u> <u>Lewis v. Johnson</u>, 359 F.3d 646, 656 (3d Cir. 2004); <u>Wright v. Vaughn</u>, 2004 WL 1687865 at *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, <u>see</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  <u>See</u> <u>Buehl v. Vaughn</u>, 166 F.3d 163, 173-74 (3d Cir.), <u>cert.</u> <u>dismissed</u>, 527 U.S. 1050 (1999).

Petitioner raised his numerous ineffective assistance of trial counsel arguments during his PCR motion.  The PCR court, citing <u>Strickland</u>, addressed every argument raised by Petitioner in his PCR motion, finding, in relevant part:

11

Again, all I have is a bald assertion there should be voice print identification, where a positive I.D., both out-of-court and in-court; you have DNA evidence on him, you have police officers' testimony.  It's not like this case just clung to an identification by a victim in a dark lot.  There was substantial corroborative evidence that supported Mr. Ellison's identification by this victim, plus the show-up immediately after the incident. ...

There's just been a failure to demonstrate anything on either prong [of Strickland] because there was a failure to ask for voice identification in light of all the identification that contribute to Mr. Ellison's conviction.  The voice identification, I can't see how it would have changed the result in this case considering the substantial evidence against Mr. Ellison.

* * *

Mr. Ellison also fails to specify any alleged deficiency of trial counsel, and/or appellate counsel other than failure to request voice identification which I have addressed.  He does not raise any issue as to jury charge which has been affirmed already, or any type of other charge that should have been given.  He shows no prejudice in his general claim of ineffective [assistance] of counsel.

He also alleges that counsel was ineffective for not objecting to or challenging my finding of extended term as a sentence enhancement and the application and presentation of evidence supporting it violated his due process rights under the state and Federal constitution.

* * *

. . . I'm talking about from the standpoint of having a mandated sentence that the court has to impose based on this type of conviction.  Your attorney could have argued until he was blue in the face, quite candidly, at the time of sentencing concerning mitigating factors.  The statute mandates what I have to do in terms of a sentence of life imprisonment without parole.

12

It's alleged that trial counsel was ineffective by
failing to properly investigate and prepare the case,
that he didn't adequately prepare or exercise normal
customary skills in establishing the defendant's
innocence and there was a lack of adequate client
consultation which resulted in gross ignorance of the
defendant's specific instructions or defense tactics,
saying they were a cumulative effect of the following
errors, and I read those all on the record this
morning, so I'm not going to read them again.  The
applicable law relevant to ineffective assistance of
counsel claims was explained above in the <u>Strickland</u>
standard and the <u>Fritz</u> standard.

The State argues that a review of the transcripts,
and I agree, shows that the defense counsel did
adequately cross-examine each and every witness called
by the State, and in a few instances counsel raised
issues on his own that compelled the State to conduct a
redirect examination because of the effective cross-
examination.

. . . Mr. Ellison, I find, fails to specify how the
trial [counsel]'s cross-examination was deficient nor
does he explain what counsel should have asked or
should have done.  He just makes an assertion that more
should have been done.  Neither is there an explanation
how the outcome of the trial would have been different
even if counsel did additional cross-examination.

Finally, Mr. Ellison fails to suggest what trial
counsel should have done to cast doubt upon Ms. Chery's
credibility . . .

* * *

Mr. Ellison's contention that trial counsel failed
to produce witnesses which were necessary to prepare
for an effective cross examination and failed to
follow-up on information given to him and investigate
potential witnesses again is without merit.  It's a
bald assertion not supported by any witness' names or
information or certifications.  Again, there's nothing
to support its application nor does he explain what
information was given to Mr. McCormick that he failed
to follow up on.

Mr. Ellison alleges that he informed trial counsel
of his innocence and trial counsel failed to review

13

discretionary material and Mr. Ellison's version of the
facts to prove there was no physical evidence that
connected him to the robbery.  That is in contravention
to the physical evidence submitted during the course of
the trial.

Mr. Ellison fails to explain what this
discretionary material refers to.  He does not explain
his version of the facts.  As I said there's ample
evidence that connected, physical evidence that
connected Mr. Ellison to the crime, particularly blood
and DNA evidence.  You can argue until you are blue in
the face about how he got the blood on his clothing,
but the fact remains that was a jury fact that they
considered and dismissed, that it didn't come just
because he took the personal property as was inferred
and argued during the course of the trial.  In other
words, found and picked up.  Rather they believed when
combined with the identification testimony that in fact
he did assault the victim as she alleged.

* * *

The last contention is that trial counsel refused
to meet with him to discuss his case in terms of any
possibl[e] strategy, forcing petitioner to file pro se
motions.  There were many filed.  Mr. Ellison offered
to the court many times . . . .  But he was
vociferously, is the word I would use, arguing for
himself at the time.  We went back and forth as to
whether he wanted to represent himself, be represented
by counsel.  I let him, in spite of the time
constraints, argue many of these applications in front
of me in court, with Mr. McCormick there, including Mr.
McCormick.  This has all been addressed on the record.

* * *

Again, I find based on the reasons I expressed on
the record the defendant has failed to present a prima
facie case to warrant a plenary hearing, and based on
the failure to fulfill the two prong requirements of
Strickland as applied in Fritz, I'm denying the post
conviction relief application.

(Ra 10 at pp. 47-59).

14

The Appellate Division affirmed the PCR court's findings, without discussion, "for the reasons set forth by Judge Walter R. Barisonek in his thorough oral decision of March 13, 2006."  (Ra 25).

In this case, a review of the record shows that counsel was competent and did not perform deficiently.  This is evidenced in the record by Petitioner's acquittal on count two of the indictment, as well as by a review of counsel's cross-examinations, closing arguments, and motion practice on Petitioner's behalf.  As set forth in the record, especially the oral decision of the PCR judge (Ra 10), the evidence against Petitioner included not only the victim's identification and testimony, but DNA evidence and testimony of police witnesses. Thus, Petitioner has not demonstrated that the results of the trial would be different had counsel performed more to his liking.

Therefore, as the record reveals that the state courts relied on the Strickland standard in evaluating Petitioner's ineffective counsel claims, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable

15

determination of the facts in light of the evidence presented in the State court proceeding."   Petitioner's claims will be denied.

## C.   **Petitioner's Sentencing Claims**

Petitioner argues that he did not know that he was subject to an extended term of life imprisonment without the possibility of parole.  He states that if he would have known, he would have taken the plea bargain offered.  Further, Petitioner argues that one of his convictions was reversed by the state appellate courts, and that there should have been a hearing to determine the facts surrounding his two former plea agreements used to justify the extended sentence.  Finally, Petitioner argues that the facts concerning his extended term sentence should have been made to a jury to find them proven beyond a reasonable doubt.

The sentencing judge acknowledged that the murder conviction was vacated, and that Petitioner was entitled to an extended term hearing, stating:

> Okay.  State [has] also filed an application for an extended term under the three strike law . . . alleging that he's eligible for mandatory sentencing under that Act based on multiple prior convictions which include– well, the original conviction . . . said murder, but according to the presentence report, that was vacated by the Appellate Division; and then I see there was a plea to an aggravated manslaughter charge that he was sentenced to . . . .
>
> The second case the State relies upon is a conviction out of Monmouth County court.  A plea of guilty was entered on . . . .  He's, pursuant to the extended term application, entitled to a hearing as to whether or not he is applicable for the extended term under that statute, whether it applies to him.

16

Now on the judgment of conviction it says
aggravated assault, that's why I read that, but
obviously in a plea to 2C:14 that is an aggravated
sexual assault, not a[n] aggravated assault, otherwise
it would be a 2C:12.

(Ra 9 at pp. 2-3).  After hearing from defense counsel, the

sentencing judge went on to discuss the extended term motion by

the State, and held, in relevant part:

All right.  2C:43-7.1 indicates an extended term
for repeat violent offenders, and under subsection A,
life imprisonment without parole.  A person convicted
of any crime under the following statutes, and it's
2C:11-3, subsection A of 2C:11-4, that's the section
dealing with, the aggravated manslaughter, a crime of
the first degree . . . or a conviction under N.J.S.A.
2C:14-2, that's the aggravated sexual assault statute,
that's what State relies on as far as the second
conviction, who has two or more prior and on separate
occasions been convicted of a crime under those
foregoing sections or under any similar statute of the
United States, this state or any other state for a
crime that [has] been substantially equivalent to a
crime under any of the foregoing sections shall be
sentenced to a term of life imprisonment by the court
with no eligibility for parole.

State is maintaining that in fact those
qualifications have been met, the mandatory minimum
qualifications, and based on the judgments of
conviction that were attached to the State's moving
papers, in fact there is a conviction for aggravated
manslaughter under 2C:11-4(a) and a second conviction
under 2C:14-2 aggravated sexual assault.  So the
reference is to the statutory number that in fact shows
he has two crimes of violence that are required.

* * *

For purposes of this hearing I find there's no
prejudice to the defense with respect to the wrong
judgment of conviction being attached.  Same matter was
dealt with, but with a subsequent judgment.  There's no
dispute that that judgment is a properly entered
judgment against this defendant, and it's one upon
which the State may rely for entering the application

17

for the extended term.   Second one was included in the
original motion for the extended term that was filed
within the 14 day rule.   So even if it's a technical
violation, it's just that, a technical violation.
There's no prejudice to the defense as far as I'm
concerned.   So I am . . . finding that the motion was
filed within time; that the documents that were served
and filed on December 6th relate back to the original
motion by way of an amendment to the original motion.
There's no prejudice to defense, so I'm finding it was
filed within time, . . . .

There's no discretion that's given to this court,
so I'm going to grant the motion pursuant to 2C:43-7.1
for the extended term.

(Ra 9 at pp. 5-10).

Further, Petitioner raised the arguments concerning his

sentence in his state post-conviction relief motion.   The PCR

court held, with regard to Petitioner's Blakely claims:

The defendant finally says that he was denied his
Federal right to a trial by jury because of the
extended term and presentation of evidence supporting
it were not submitted to the grand jury who returned
the indictment or found by the jury at the time of
trial and they were not proven beyond a reasonable
doubt.   The Appellate Division addressed that issue on
appeal.   Blakely addresses the issue.

The New Jersey Supreme Court case that deals with
that issue as far as extended terms are concerned, the
court considers the record, that's it.   In terms of
making these type[s] of in and out decisions of whether
the extended term should apply, it's not the same as
the Blakely situation where the court is relying on
enhanced facts that make a crime more serious and
Blakely was above a presumptive term.

Our courts have already said in this state, it is
not what's happening on extended term.   It's based upon
fixed criteria, specifically the defendant's pedigree
information and whether or not he had the prior
convictions that fit the statutory make-up for an
extended term, and in this case, it fit both under an

18

> extended term application and under the three strikes
> law. So no need based on existing case law for a jury
> to make that determination, and the Appellate Division
> found as well.

(Ra 10 at pp. 58-59).

A federal court's ability to review state sentences is
limited to challenges based upon "proscribed federal grounds such
as being cruel and unusual, racially or ethnically motivated, or
enhanced by indigencies." See Grecco v. O' Lone, 661, F. Supp.
408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to
a state court's discretion at sentencing is not reviewable in a
federal habeas proceeding unless it violates a separate federal
constitutional limitation. See Pringle v. Court of Common Pleas,
744 F.2d 297, 300 (3d Cir. 1984). See also 28 U.S.C. § 2254(a);
Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497
U.S. 764, 780 (1990). Petitioner's claims are based upon the
Sixth Amendment right to trial by jury.

In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000),
pursuant to the Sixth Amendment right to trial by jury, the
Supreme Court held that "[o]ther than the fact of a prior
conviction, any fact that increases the penalty for a crime
beyond the prescribed statutory maximum must be submitted to a
jury, and proved beyond a reasonable doubt." In Blakely v.
Washington, 542 U.S. 296 (2004), the Supreme Court overturned a
sentence imposed under Washington state's sentencing system,
explaining that "the relevant statutory maximum is not the

19

maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 542 U.S. at 302 (internal quotations omitted). Most recently, in United States v. Booker, 543 U.S. 220 (2005), the Supreme Court applied the rule of Apprendi to the United States Sentencing Guidelines, finding the Guidelines unconstitutional, and rendering them merely advisory, rather than mandatory.

Under New Jersey law, the judicial imposition of an extended term sentence based on prior convictions is constitutional. See State v. Thomas, 188 N.J. 137, 149-52 (2006). Under federal law, Petitioner is not entitled to habeas relief because the increase in Petitioner's sentence due to the prior convictions falls within Blakely's prior conviction exception. See e.g., Apprendi, 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (emphasis added)); Almendarez-Torres v. United States, 523 U.S. 224 (1998) (the government need not include in an indictment, and have a jury find, the fact of a prior conviction for purposes of determining whether a sentence's maximum could be increased based on the prior conviction). Thus, as the Supreme Court held in Blakely, an enhanced sentence as a persistent offender based upon a record of prior convictions is a fact which could be determined by the judge and could serve as

the basis for determining the statutory maximum sentence. Accordingly, the New Jersey courts' denial of Petitioner's <u>Blakely</u> claim was not contrary to, or an unreasonable application of, Supreme Court precedent.[2]

Finally, Petitioner's contention that he was not informed of the possibility of an extended term sentence is not supported by the record.  During the course of the PCR motion, Petitioner's counsel discussed the plea offer with the court.

| | |
|---|---|
| Mr. Devine: | By the same token, your Honor, he could have pled to the second degree crime and gotten a 38 with a 27. |
| The Court: | But he didn't.  He had that choice, that's my point.  It is not like – |
| Mr. Devine: | What I'm saying – |
| The Court: | It is not like even what Mr. Barnes said.  There is an issue and I wasn't sure what I was doing even thought [sic] I found that was not accurate.  Here Mr. Ellison is not saying that at all.  <u>He knew the consequence of what he faced, he knew he faced life if he lost, and he said no he wanted the [sic] take it to trial.</u> |

(Ra 10 at p. 29).  Petitioner was then given an opportunity to speak to the judge on the record and did not dispute the claim that he knew he faced "life if he lost."  (<u>Id.</u>).  There is no evidence in the record that Petitioner was not informed of the consequences of going to trial, and Petitioner has demonstrated

---

[2]   This Court does not have jurisdiction to review Petitioner's claims concerning the validity of the underlying state court convictions which qualified him to the extended term.

neither that counsel was ineffective in this regard, nor that his sentence was illegal.

### CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

### CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied. The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.


                                          _____
                                          STANLEY R. CHESLER
                                          United States District Judge

Dated:  March 17 2009 ,